*MARKHAM vs CLOSE.*

**APPEAL FROM THE COURT OF THE FIFTH DISTRICT, THE JUDGE THEREOF PRESIDING.**

Western District,
September 1831.

MARKHAM
*vs.*
CLOSE.

The infliction of cruel punishment, on the slave by his master, is a criminal offence which must be punished by a criminal prosecution, and not in a civil action.

Maiming, mutilating, or cruel or inhuman treatment of a slave, is a public offence, and must be prosecuted criminally; and after conviction, the fine and other penalties for such conduct, are to be levied on the offender by the court before whom the conviction takes place.

The Civil Code treats, alone, of private rights of individuals, and the various interests growing out of property; but it may, in the mean time, provide in what cases a breach of the penal laws, brings with it a *forfeiture of private rights.*

This is an anomalous action, instituted in a *civil* form, to punish a *criminal* offence.

D. K. Markham, without alleging any title to the slave, or having any individual interest in the cause, appears as public prosecutor; and on the 17th of June, 1830, presented his petition to the district judge at chambers, alleging that the defendant had cruelly beat and maltreated one of his slaves, named Augustin, and prayed that the said slave be taken out of his master's possession and sold, and placed out of his reach and power; the proceeds of sale, after paying such *fine* as might be adjudged, and the costs of this suit, to be returned to the master.

The defendant appeared before the judge at chambers, and after being heard by his counsel, the judge ordered the cause to be docketed, and tried as a civil case.

At the November term 1830, the defendant's counsel filed peremptory exceptions to the form of action, alleging that it was unknown to the law, and that all the proceedings are null and void. The exceptions were overruled, and an answer put in on the merits. A bill of exceptions to the decision was taken.

The answer alleges that the slave Augustin is a runaway, and that when he received the chastisement complained of, he had just been brought back from the Mississippi, after ab-

sconding for a considerable time. That he had him whipped with a whip in the manner he was authorized to do by law.

Parole testimony of several witnesses who saw the negro shortly after he had been flogged, was received. He was severely whipped, and his back and hips very much cut and skinned. The weather being warm, the wounds smelled badly; the negro was obliged to lie on his belly, being unable to sit or lie in any other position.

P. Negat, a neighbor of the defendant, says he flogged the negro, by order of the master, when first landed. At first he gave him twenty-five' or thirty lashes, with a whip. That on the way to his master's he became sullen, and refused to go, when he gave him ten or twelve lashes more over the shoulders. The master came, and the negro still refusing to go with either of them, the master had him whipped again. The negro is disobedient, and a runaway. He says he knows the defendant, and that he is not a cruel or severe master.

The jury simply found a verdict for the plaintiff. The defendant then moved for a new trial: first, on the ground that the verdict is contrary to law and evidence; secondly, that it does not find any thing in fact for the plaintiff, or grant any thing prayed for in the petition. The new trial was refused.

There was judgment on the verdict, decreeing the slave to be sold, and placed out of the power of his master, who is convicted of having cruelly beat and maltreated him; and the balance of the proceeds of the sale, after paying the costs of the prosecution, be paid over to the defendant. He, the said defendant, not being allowed to purchase the slave, having refused on the trial to purge himself, on oath, of the charge of cruel treatment of said slave. The defendant appealed.

The prosecution is founded on the 192d article of the *Louisiana Code*, and a clause in the *Black Code*, 1 *Moreau's Dig.* 118, § 17.

*Lewis* and *Markham* for plaintiff.

The question in this case is, whether a slave can be taken from his master or owner, for cruel and inhuman treatment, by a *criminal* or *civil* process? We think it may be done by the latter.

1st. It is expressly provided by the Civil Code, that the master or owner of a slave shall not chastise him with *unusual rigour*, or maim or mutilate him so as to expose his life, or cause his death.—*La. Code*, 173.

2d. When the master is guilty of cruel treatment towards his slave; the judge shall, besides inflicting a penalty, cause the slave to be sold, and placed out of the power of his master.—*La. Code*, art. 193.

3d. The law provides that when slaves are cruelly treated by not providing food, clothing, and lodging, complaints may be made to a justice of the peace in favor of the slave, for redress. And in case of beating or maiming slaves, the master and owner may be fined, and made to pay a penalty, if found guilty.—1 *Moreau's Digest*, 111, § 39. *Ibid*, 118, § 16, 17.

*Garland* and *Linton* for defendant:

It will be seen from the evidence, that the chastisement. inflicted by the defendant on his slave, was with one of the weapons excepted by law: and that portion of the *Black Code*, and the 192d article of the *Louisiana Code*, relied on by the plaintiff, contemplates a *conviction* before a forfeiture.

2d. The law of forfeiture had its origin in the feudal system, and was intended to enlarge the prerogatives and resources of the crown. But it is now different, and in this country no man can be deprived of his property without his consent; nor can a forfeiture take place before conviction of the offence by a criminal proceeding.—2 *Bac. Abr.* 577, 582, 679. 4 *Black. Com.* 432.

3d. The *Black Code* fixes the penalty of cruel treatment to a slave, which can only be enforced by a criminal proceeding; and as the defendant has never been convicted of

**W 3**

cruel treatment, his slave cannot be taken from him and sold. 1 *Moreau's Dig.* 118, § 16. *La. Code,* art. 192. *Old Civil Code,* p. 34, art. 27.

*Porter, J.* delivered the opinion of the court.

This action was commenced by the plaintiff, to compel the defendant to dispose of one of his slaves. The petition charges him with having beat, and cruelly treated the slave, and with a gross abuse of the power which the law has conferred on the master.

There were several exceptions pleaded to the petition, and on being overruled, an answer on the merits was put in. The cause was submitted to a jury, who found a verdict for the plaintiff. On this verdict the court directed the slave to be sold, the proceeds to be first applied to the costs of this suit, and the balance to be paid to the defendant.

The defendant has appealed. The record brings before us the evidence on which the jury rendered the verdict, and that evidence seems to fully support the conclusion to which they came. It is greatly to be deplored, that owners of slaves should abuse their authority, and violate the duties of humanity. But the punishment which the law has provided for their misconduct, can only reach them in the mode, and through those forms of proceeding, which that law has prescribed.

One of the exceptions which the judge *a quo* overruled, was, that the plaintiff had no right to institute any suit or proceeding against the defendant, and that the court had no jurisdiction of the case. We think this objection was correctly made, and that it should have been sustained.

We come to this conclusion from the language of the statutory provisions on this subject; their obvious meaning; and the considerations of public policy, which we cannot suppose to have been disregarded by the legislature, when they acted on a matter of so much importance to the peace and safety of society.

The 16th section of the *Black Code* provides that, "if any person whatever shall wilfully kill his slave, or the slave of another person, the said person being convicted thereof shall be tried and condemned agreeably to the laws of the territory; and in case any person or persons should inflct any cruel punishment, except flogging, or striking with a whip, leather thong, switch or small stick, or putting in irons, or confining such slave, the said person shall forfeit and pay for every offence, a fine not exceeding $500, and not less than $200."

The 21st section of the same code declares that, the fines not exceeding twenty-five dollars, which are ordered by the act, shall be recovered before a justice of the peace, and those which are above twenty-five dollars, shall be recovered before a competent tribunal.

The 16th section, already referred to, provides for the wilful killing of a slave, and directs the trial for such offence to be according to the laws of the (then) territory. There can be no doubt this killing is regarded as a criminal offence, and that the trial here spoken of is the same as that which takes place when any other crime is committed.

In the same section, and immediately following the provisions in relation to killing, the law treats of offences against the person of a slave *less* than killing, and punishes them by fine. No good reason suggests itself to us why mutilating a slave, should not also be regarded as an offence which amounts to a crime, and punished as such. The circumstance of a pecuniary penalty being alone inflicted for the injury, by no means deprives it of the character just given to it. That has to be ascertaind by the inquiry, whether it affects the peace and good order of society. The law already cited considers it a public offence to kill a slave; and, maiming and mutilating one, should fall under the same denomination. The penalty is given to the state by the same language which provides for fine in regard to all other crimes:

*Margin notes:*

Western District, *September* 1831.

MARKHAM
*vs*
CLOSE.

The infliction of cruel punishment, on the slave by his master, is a criminal offence which must be punished by a criminal prosecution, and not in a civil action.

Maiming, mutilating, or cruel or inhuman treatment of a slave, is a public offence, and must be prosecuted criminally; and after conviction, the fine and other penalties for such conduct, are to be levied on the offender by the court before whom the conviction takes place.

no other mode of enforcing it is pointed out different from that given for the penalties affixed to offences against the property or person of the free citizen. We conclude, therefore, that it should be prosecuted in the same way these offences are, and by the same officer.

The article in the Code on which the present action is brought, strengthens the construction we put on this statute, and shews, at the same time, the error committed in addressing this complaint to the judge, in the exercise of his civil jurisdiction. It is in these words: "No master shall be compelled to sell his slave but in one of two cases, to-wit: The first, when being only coproprietor of the slave, his coproprietor demands the sale, in order to make partition of the property: the second, when the master shall be convicted of cruel treatment of his slave, and the judge shall deem proper to pronounce, *besides the penalty established for such cases*, that the slave shall be sold," &c.—*La. Code*, art. 192.

The conviction here spoken of which must precede the order to sell, we think, evidently means condemnation, or a criminal prosecution. The term cannot be correctly applied to a judgment pronounced in a civil case; and we are not, at this moment, aware of any instance in which the legislature have so used it. Admitting that, from inadvertence, it might be so employed in relation to a civil suit, the *subsequent* clause of the statute takes away all pretence from so interpreting it in this instance; for it connects the direction to sell the slave, with the same decree which inflicts the other penalty provided by law, namely, fine; cumulates the two punishments in the same prosecution; and clearly contemplates that the order to sell, is to be made in those proceedings which the state may institute, to enforce the pecuniary penalty, and *only as a consequence* of the master being convicted of an offence which exposes him to that penalty.

The civil code treats, alone, of private rights of individuals, and the various interests growing out of property; but it

It was argued that the *Louisiana Code* only treats of civil rights and obligations, and that it cannot be presumed, when it speaks of penalties and forfeitures, to have reference to

the criminal law.    It is true, our Code professes to regulate property, and the various interests which men may acquire in it; but in doing so, it is neither out of the scope or object of such a work, to provide in w¹ .at cases a breach of the penal law may bring with it a forfeiture of private rights.    Thus we find in the Code, that tutors cannot be taken from those persons on whom the penal law has inflicted disabilities, and that the child may be disinherited who has committed a crime, or accused the parent of one.—*La. Code*, 322, 1613.

*may, in the mean time, provide in what cases a breach of the penal laws, brings with it a forfeiture of private rights*

The case is so clear a one, that we are not under the necessity of resorting to the obvious considerations of policy which, we must suppose, would have prevented the legislature from intrusting so delicate a matter to the interference of any, and every individual in society.    Every consideration which induces the state to take the prosecution of offences against her peace and her dignity into her own hands, and forbids the interference of private passions with the vindication of her justice, most emphatically applies in cases as that before us.    The individual who interfered in this instance may, we believe was, actuated by feelings which we cannot but respect.    But what in this instance was the suggestion of humanity, might, in the next, be the promptings of envy, malice, and all uncharitableness.

It is therefore ordered, adjudged, and decreed, that the judgment of the district court be annulled, avoided, and reversed.    And it is further ordered, that the cause be dismissed, the petitioner paying costs in both courts.